IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ LUIS SANTIAGO BORRERO,

   Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

CIVIL NO.: 19-1428 (MEL)

**OPINION AND ORDER**

     Pending before the court is Mr. José Luis Santiago Borrero's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 18. Plaintiff alleges that the administrative law judge erred at step three of the sequential process by not finding that he met the requirements of Listing 1.04, covering disorders of the spine. It is also claimed by Plaintiff that the administrative law judge's RFC determination is not supported by substantial evidence.

**I.    Procedural and Factual Background**

     On May 15, 2015, Plaintiff filed an application for Social Security benefits alleging that on January 1, 2011 ("the onset date"), he became unable to work due to disability. Tr. 21.[1] Prior to the onset date, Plaintiff worked as a police officer, solid waste manager, and claims supervisor. Tr. 28. Plaintiff stopped working in 2009 as a property and safety manager for a trash collection company because the company was sold. Tr. 37, 40. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 23. Plaintiff's disability claim was denied on July 2, 2015, and upon reconsideration. Tr. 21. Thereafter, Plaintiff

---

[1] "Tr." refers to the transcript of the record of proceedings.

requested a hearing which was held on August 18, 2017 before Administrative Law Judge Gerardo R. Picó ("the ALJ"). Tr. 34-51. On November 16, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 29. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1-3. Plaintiff filed a complaint on May 1, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 18, 22.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 23. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had a severe impairment of disc herniation with cord compression. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. Next, the ALJ determined that during the relevant period Plaintiff had the "residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except with the capacity to stand and/or walk 4 hours in an 8-hour workday and to change positions at will." Tr. 24. At step four, the ALJ determined that through the date last insured, Plaintiff could perform his past relevant work as a claims supervisor as generally performed. Tr. 28. Thus, the ALJ concluded that Plaintiff was not disabled. Tr. 28-29.

### III.   Legal Analysis

Plaintiff objects to the ALJ's final decision denying his disability benefits on two grounds. First, Plaintiff argues that the ALJ erred by not finding him disabled under Listing 1.04 concerning disorders of the spine. ECF No. 18, at 8. It is also alleged by Plaintiff that the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly interpreted raw medical data. Id. at 5.

**A. The ALJ's Step Three Determination**

Plaintiff claims that the ALJ erred at step three of the sequential process by not finding that he met the criteria of Listing 1.04. ECF No. 18, at 8. At step three, the claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d); Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793 (1st Cir. 1987) ("[t]he burden to demonstrate the existence of such a [listed] impairment rests with the claimant."). To meet the criteria of a listing, the claimant's impairment must satisfy all the duration and objective medical requirements. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3).

"Listing 1.04 is a musculoskeletal system listing related to disorders of the spine." Kilton v. Astrue, Civ. No. 11-292, 2012 WL 892924, at *2 (D. Me. Mar. 14, 2012). In order to satisfy Listing 1.04, a claimant must demonstrate a disorder of the spine (such as herniated nucleus pulposus or degenerative disc disease) which compromises the nerve root or spinal cord, with

> (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

See MacNeil v. Astrue, 908 F. Supp. 2d 259, 264-65 (D. Mass. 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04).

In the case at hand, Plaintiff argues that he meets Listing 1.04, without specifying which subsection applies, because medical findings indicate that he has herniated nucleus pulposus, degenerative disc disease, spinal stenosis, and osteoarthritis. ECF No. 18, at 9. It appears that Plaintiff is claiming that he meets the criteria of Listing 1.04(C) because he references a medical finding of spinal stenosis. Id. In order to meet the criteria of Listing 1.04(C), Plaintiff would have to show the following: (1) lumbar spinal stenosis; (2) which resulted in pseudoclaudication; (3) manifested by chronic nonradicular pain and weakness; and (4) resulted in an inability to ambulate effectively. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. A diagnosis of spinal stenosis is insufficient by itself to satisfy Listing 1.04 (C) and Plaintiff has not cited to any evidence that he satisfied the remaining medical requirements of Listing 1.04(C) including evidence of pseudoclaudication, chronic nonradicular pain and weakness, and an inability to ambulate effectively. Id.

In fact, treatment notes from treating internist Dr. Lizbeth Alvarado Dominicci ("Dr. Alvarado) reflect that Plaintiff was ambulatory and did not require an assistive device. Tr. 306, 318, 324, 345, 396, 401, 405, 415, 420. Furthermore, in November 2014, Plaintiff reported that he exercised five days a week, which included walking six to seven miles in one and a half to two hours. Tr. 299. Plaintiff has not cited to any evidence on the record to discredit the ALJ's findings as to Listing 1.04.

Plaintiff's claim that the ALJ should have solicited an outside medical advisor to determine if Plaintiff met the criteria of Listing 1.04 is also unfounded. ECF No. 18, at 8-9. There is no requirement that the ALJ must solicit the opinion of a medical expert in determining

that Plaintiff does not meet one of the listed impairments. See Darcy N. on Behalf of Richard N. v. Berryhill, Civ. No. 17-374, 2018 WL 2552163, at *8-9 (D. Me. June 3, 2018) (explaining that an ALJ is not required to consult with medical experts when he finds the claimant's impairments do not medically equal a listing); Lord v. Berryhill, Civ. No. 18-475, 2019 WL 4018308, at *8 (D.N.H. July 23, 2019) ("making a step-three determination does not require an ALJ to interpret raw medical data in functional terms . . . [s]o, the fact that the ALJ did not rely on any medical opinions at step three was not a reversible error."). The ALJ's determination at step three that Plaintiff did not meet the requirements of Listing 1.04 is supported by substantial evidence.

**B. The ALJ's RFC Determination**

Next, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 18, at 5. Plaintiff specifically alleges that the ALJ improperly interpreted raw medical data because the ALJ did not obtain an expert medical opinion regarding Plaintiff's RFC. Id. An RFC assesses the most a claimant can still do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). Under the regulations, the ALJ has the responsibility to synthesize complex medical data and determine a claimant's RFC based upon the entire record. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

"Medical expert opinions are required for the ALJ to determine the extent to which a claimant's medical conditions limit his ability to perform work-related activities." Valentín-Rodríguez v. Comm'r of Soc. Sec., Civ. No. 12-1488, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014). "To evaluate a claimant's RFC, an ALJ cannot rely on raw medical data; rather, he must look to physician's opinions to translate that evidence into functional terms." Id. An ALJ,

8

however, is not "precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the Secretary does not overstep the bounds of a lay person's competence and render a medical judgment." See Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).

In the case at bar, a medical expert did not analyze Plaintiff's functional capacity based on a review of the complete record. Thus, the question of whether substantial evidence supports the ALJ's finding that Plaintiff retains the functional capacity to do light work "depends on a qualitative assessment of the medical evidence that was before the ALJ." See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). "If that evidence suggests a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions, then we must uphold the ALJ's finding; elsewise, we cannot (in the absence of an expert's opinion)." Id.

In his disability application, Plaintiff claimed that his ability to work is limited by cervical spondylosis, discogenic disease, and high blood pressure. Tr. 24, 236. The ALJ noted that Plaintiff reported neck pain and numbness in both arms following a motor vehicle accident in October 2011. Tr. 25, 40, 370. Plaintiff was in the driver's seat with his seat belt on when he was rear-ended by a vehicle while stopped. Tr. 40, 427. Plaintiff recalled being in no acute pain so he went home. Tr. 427. The next day Plaintiff woke up with neck pain, and two days later went to his primary care physician. Tr. 427.

The ALJ noted that records from the Automobile Accident Compensation Administration ("AACA") from October 2011 show that Plaintiff was initially diagnosed with cervical/thoracic spine muscle spasm. Tr. 25, 377. In December 2011, treating physiatrist Dr. Carlos Quiñones Bodega ("Dr. Quiñones") reported that Plaintiff was alert and oriented to time, place, and person.

Tr. 25, 90, 96. A physical examination of Plaintiff revealed 5/5 motor strength and tenderness of the cervical spine. Tr. 25, 90, 96. Although Dr. Quiñones checked a box on his report indicating Plaintiff was "disabled," the issue of disability is a finding reserved solely to the Commissioner. See 20 C.F.R. § 404.1527(d); Tr. 90, 96. Furthermore, Dr. Quiñones specified that the disability was for approximately three months, which does not meet the 12-month requirement of the Act. See Colón-Hernández v. Comm'r of Soc. Sec., Civ. No. 17-1456, 2018 WL 4945307, at *3 (D.P.R. Oct. 9, 2018) ("A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months"); 42 U.S.C. § 423(d)(1)(A).

In April 2013, examining physiatrist and rehabilitation specialist Dr. Héctor M. Cortés Santos ("Dr. Cortés") reported that Plaintiff presented with high blood pressure and multiple traumas sustained in a motor vehicle accident. Tr. 25, 427. Dr. Cortés diagnosed Plaintiff with pain and stiffness in the cervical muscles, C5/6 disc herniation with cord compression, smaller C4/5 and C6/7 disc herniations with cord compression, and right C7 radiculopathy and opined that he had a 13 percent total body impairment. Tr. 431, 433. The ALJ noted that despite Plaintiff's complaints, Dr. Cortés found that Plaintiff had no acute pain, a normal gait with no assistive devices, no difficulty sitting and standing up from a chair, no difficulty standing on toes or heels, no balance deficit, good muscle tone, and full muscle strength (5/5) with the exception of slightly less than full strength (+4/5) in the right triceps. Tr. 25-26, 429-30. Dr. Cortés reported that Plaintiff had some upper back muscle stiffness and mild to moderate tenderness in his cervical/thoracic spine as well as slightly decreased cervical rotation. Tr. 430. Dr. Cortés also found that a Spurling's test was negative and Plaintiff showed no muscle atrophy. Tr. 26, 430. Further, it was reported by Dr. Cortés that Plaintiff had normal pulses, non-tender upper

10

extremities, and had a full range of motion in his upper extremities with the exception of some neck discomfort. Tr. 26, 430. Although Plaintiff had decreased sensation in the third and fourth digits, a neurological examination showed normal deep tendon reflexes, "no give and take weakness during muscle strength test," and his tone was adequate. Tr. 430-31. Furthermore, Dr. Cortés found that Plaintiff has a right-hand grip for up to 65 pounds and a left-hand grip of 90 pounds. Tr. 430.

The ALJ also considered evidence from examining orthopedic surgeon Dr. Carlos Grovas Badrena ("Dr. Grovas"). Tr. 26, 99-107. In August 2013, Plaintiff presented with complaints of decreased range of motion of the neck, para-cervical pain, and pain in the bilateral trapeziuses. Tr. 26, 103. The ALJ noted that Dr. Grovas specifically reported that Plaintiff "does not mention pain in his lower back." Tr. 26, 103. At the orthopedic examination, Dr. Grovas found that Plaintiff was alert, fully oriented, had a normal gait and posture, and he had free movement of his neck with "mild para-cervical spasm and in both trapeziuses." Tr. 106.

In August 2013, Dr. Alvarado examined Plaintiff and found that he was ambulatory without need for an assistive device with intact head, eyes, nose, ear, throat ("HEENT") findings, and that Plaintiff's respiratory, cardiovascular, and abdomen exams were normal. Tr. 343-45. Dr. Alvarado also reported that Plaintiff had an intact musculoskeletal system with no joint pain or swelling, arthritis, or myalgias. Tr. 344. It was also noted that Plaintiff did not have edema or cyanosis. Tr. 345.

In May 2014, Plaintiff underwent a MRI of the cervical spine. Tr. 27. The MRI report from examining radiologist Dr. Rogelio Muñoz ("Dr. Muñoz") revealed cervical spondylosis and discogenic disease. Tr. 27, 283. There was no evidence of facture, subluxation, or abnormal spinal cord signal. Tr. 283. Dr. Alvarado examined Plaintiff in June 2014, September 2014, and

March 2015 and her progress notes reflect that Plaintiff had an intact musculoskeletal system with no joint pain or swelling, arthritis, or myalgias. Tr. 292, 306, 317

The ALJ also evaluated the opinion of state agency consultant internist Dr. Ulises Meléndez ("Dr. Meléndez") who reviewed the record in July 2015 and found that Plaintiff had no severe impairments. Tr. 27, 112. State agency consultant internist Dr. Florentino Figueroa ("Dr. Figueroa") reviewed the record upon reconsideration in October 2015 and found the evidence in the file did not support any additional limitations. Tr. 120-21. The ALJ afforded little weight to these opinions because the state agency consultants did not have the complete record of the Plaintiff, including new evidence submitted at the hearing level and Plaintiff's testimony. Tr. 27.

In his decision, the ALJ noted that there was a "lack of treating doctor reports limiting [Plaintiff's] physical activities." Tr. 28. In fact, in March 2014, Plaintiff reported that he exercised for three times a week for at least 30 minutes each time. Tr. 295. In July 2014, Plaintiff reported walking five days a week for about 60 minutes each time. Tr. 312. Lastly, in November 2014, Plaintiff reported that he exercised five days a week, which included calisthenics, walking six to seven miles in one and a half to two hours, weight lifting 25 pounds in sets of five with 20 repetitions, and completes five sets of pushups with 40 repetitions. Tr. 299.

Thus, the ALJ determined that the Plaintiff could perform light work "in light of the paucity of clinical deficit noted upon physical examinations and diagnostic studies, the relative conservative physical treatment throughout the period of adjudication with no reported hospitalizations or spine surgeries, [Plaintiff's] lack of reported significant adverse side effects from medications, and the lack of treating doctor reports limiting the [Plaintiff's] physical activities." Tr. 27-28.

The evidence suggests relatively mild physical impairments posing no significant functional restrictions to a layperson's eyes. "In summary, the ALJ considered evidence from multiple sources, evaluated the record, and rendered a decision that was consistent with the evidence." See Pereira v. Berryhill, Civ. No. 16-11855, 2017 WL 3567515, at *9 (D. Mass. Aug. 17, 2017) (explaining that a physical RFC assessment from a physician was not required where the medical evidence showed relatively little impairment); see also Pérez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446-47 (1st Cir. 1991) ("a finding that claimant does not suffer from any impairment posing severe or significant exertional restrictions would obviate the need for a medical assessment of exertional residual functional capacity."). Therefore, the ALJ did not err in finding that Plaintiff had the RFC to complete light work without a medical expert's RFC assessment. See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). The ALJ's RFC determination is supported by substantial evidence.

**IV.     Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of September, 2020.

s/Marcos E. López<br>U.S. Magistrate Judge